**SO ORDERED.**

**SIGNED this 21st day of February, 2012.**



Janice Miller Karlin
United States Bankruptcy Judge

___

### In the United States Bankruptcy Court
### for the District of Kansas

| | |
|---|---|
| In re: ) | |
| ) | |
| Sabrina Cooper, ) | Case No. 10-41895 |
| ) | |
| Debtor. ) | |

### Memorandum Opinion and Order Denying Motion by Credit Union to Reconsider Order Not Approving Reaffirmation Agreement

Creditor United Northwest Federal Credit Union ("United") asks me to reconsider[1] my order declining to approve a reaffirmation agreement[2] between United and Debtor Sabrina Cooper. United claims that 11 U.S.C. § 524(m)(2) strips me of authority to review, and decline to approve, the reaffirmation agreement because United is a credit union. However, as explained below, §

---

[1] Doc. 43.

[2] Doc. 41. The Reaffirmation Agreement is at Doc. 35.

524(m)(2) does not alter my statutory responsibility and duties under § 524(c)(6) to determine if a reaffirmation agreement is in Ms. Cooper's best interest and whether the agreement would create an undue hardship on her. Therefore, the motion for reconsideration is denied.

This matter constitutes a core proceedings over which the Court has the jurisdiction and authority to enter a final order.[3]

## I. Findings of fact

Ms. Cooper filed her Chapter 7 petition in October, 2010 without an attorney.[4] She listed the 2004 Ford Explorer that is the subject of this agreement on Schedule D, estimating its value at $8,125. She revealed on Schedule I that, after all deductions from her wages, her net monthly income was $2,229.23 and her total monthly expenses totaled $1,945.00—leaving her with excess monthly income of $284.23.

The reaffirmation agreement calls for her to reaffirm a debt of $7,963.44 to United, and United contends the value of the Explorer is $8,400.00 (as contrasted with Debtor's listed value of $8,125 a few months earlier). The

---

[3] *See* 28 U.S.C. § 157(b)(2)(O) (core proceeding) and § 157(b)(1) (authority to hear core proceedings).

[4] Ms. Cooper did receive the assistance of a bankruptcy petition preparer in connection with filing the required petition and schedules, but this individual is not representing Ms. Cooper in any legal capacity, did not sign the reaffirmation agreement, or appear with her at the hearing on the reaffirmation agreement.

2

agreement also indicates that after she filed her petition, her monthly income decreased by over 25%— to $1,600.00, and her monthly expenses decreased to $1,183.87—leaving her with excess monthly income of $416.13. In the agreement, Ms. Cooper explained the reduction in her monthly income by stating "I no longer have two jobs. I only have one main job." She explained the reduction in her expenses by stating "Much of the debt was taken care of in the bankruptcy." According to the information contained in the reaffirmation agreement, United did not alter the principal amount due under the loan, the interest rate, or the amount of monthly payments.

Although page 2 of the Reaffirmation Agreement Cover Sheet indicates that Ms. Cooper was represented by counsel during the course of negotiating this reaffirmation agreement and that her attorney had executed a certification in support of the reaffirmation agreement, there was no such certification filed with the Court.[5] Ms. Cooper did complete Part E of the reaffirmation agreement, which is a Motion for Court Approval of Reaffirmation Agreement that is required to be signed by all debtors who are not represented by counsel.

---

[5] The attorney certification is typically found in Part C of the Reaffirmation Agreement, which was not present in the document filed with the Court.

3

The Clerk issued a Notice of Hearing on Reaffirmation Agreement, setting the reaffirmation agreement for hearing.[6] Counsel for United was electronically notified and Ms. Cooper was notified by mail. Only Ms. Cooper appeared at the hearing. At that hearing, I provided Ms. Cooper the information that § 524(d)(1) requires I provide debtors in this situation and asked her several questions about the agreement and her finances.

After the disclosures and discussion about her income and expenses, I found that the reaffirmation agreement was not in Ms. Cooper's best interest, as § 524(c)(6)(A) requires, and issued an order not approving the reaffirmation agreement. United then timely filed its motion for reconsideration. The sole basis for the motion is the assertion that the Court has no authority to disapprove the reaffirmation agreement as a result of the language contained in § 524(m)(2).

Additional facts will be discussed below, when necessary.

## II. Standard for a Motion for Reconsideration

Rule 9023 of the Federal Rules of Bankruptcy Procedure incorporates Rule 59 of the Federal Rules of Civil Procedure, and allows for alteration or amendment of judgments on the grounds for relief set forth in Rule 60(b) of the

---

[6] Doc. 38.

4

Federal Rules of Civil Procedure, as incorporated in Bankruptcy Rule 9024.[7] Grounds for relief include mistake, inadvertence, surprise, excusable neglect, fraud or newly discovered evidence. A motion to reconsider that is filed within fourteen days of the entry of judgment is treated as a motion to alter or amend.[8]

The legal standard for granting a motion for reconsideration is narrow. "A motion for reconsideration should be granted only to correct manifest errors of law or to present newly discovered evidence."[9] "Such motions are not appropriate if the movant only wants the Court to revisit issues already addressed or to hear new arguments or supporting facts that could have been presented originally."[10]

## III. Analysis

### A. Background on reaffirmation agreements and protections afforded to debtors who enter into such agreements.

The goal of debtors who file for protection under Chapter 7 of the Bankruptcy Code is to emerge from the bankruptcy process with a "fresh start." The cornerstone of this fresh start is the discharge of personal liability on debts

---

[7] *See In re Colley,* 814 F.2d 1008, 1010 (5th Cir. 1987).

[8] *In re American Freight System, Inc.*, 168 B.R. 245, 246 (D. Kan. 1994).

[9] *Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, n.5 (10th Cir. 2000) (internal quotations omitted).

[10] *Zhou v. Pittsburg State Univ.*, 252 F. Supp. 2d 1194, 1199 (D. Kan. 2003) (citing *Van Skiver v. U.S.*, 952 F.2d 1241, 1243 (10th Cir. 1991).

5

owed prior to bankruptcy.[11] With limited exceptions—such as for those debts found in 11 U.S.C. § 523 or priority debts—a Chapter 7 debtor is no longer personally liable on prepetition debts once a discharge is granted under § 727. One additional exception to this "fresh start" is secured debts in which a debtor voluntarily reaffirms personal liability pursuant to § 524©. Given the potentially negative effect reaffirmation agreements can have on a debtor's fresh start, Congress built protections into § 524 to ensure that debtors were not indiscriminately giving away a portion of their fresh start, but instead were doing so only when it would not create an undue hardship on the debtor and the debtor's dependents, and when doing so was in the debtor's best interest.[12]

One protection the Code afforded debtors is the requirement that their attorney, if represented during the negotiation of the reaffirmation agreement, must sign a certification indicating that:

(1) this agreement represents a fully informed and voluntary agreement by the debtor;

---

[11] *See Standiferd v. U.S. Trustee (In re Standiferd)*, 641 F.3d 1209, 1212 (10th Cir. 2011) (noting that "[a] central purpose of the Bankruptcy Code is to give debtors a fresh start by discharging their preexisting debts").

[12] *See In re Jamo*, 283 F.3d 392, 398 (1st Cir. 2002) (noting that "[a]lthough reaffirmation is consensual in nature, the myriad safeguards erected by Congress reflect its recognition that a debtor's decision to enter into a reaffirmation agreement is likely to be fraught with consequence") and *In re Minardi*, 399 B.R. 841, 848 (Bankr. N.D. Okla. 2009) (stating "[b]ecause reaffirmation constitutes a debtor-invoked exception to the tenet that underpins the bankruptcy system—the 'fresh start' principle—a reaffirming debtor must be afforded some protection against his own (potentially) short-sighted decisions").

(2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and

(3) [the attorney] ha[s] fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.[13]

Thus, for represented debtors, under § 524(k)(5), their attorney fills the critical role of educating them of the potential pitfalls and consequences of reaffirming a debt under § 524, and makes an initial determination whether the reaffirmation agreement will create an undue hardship on the debtor.[14]

Congress provided another protection to debtors in § 524(m)(1). Under that subsection, there is a presumption that a reaffirmation agreement will create an undue hardship on a debtor and the debtor's dependents if the debtor's monthly expenses exceed monthly income. Judges are required to review this presumption and, if not satisfied with the explanation of how the debtor can afford the reaffirmed debt, "may disapprove" such agreement.[15]

---

[13] 11 U.S.C. § 524(k)(5)(A).

[14] *See In re Perez*, 2010 WL 2737187, *3 (Bankr. D. N.M. July 12, 2010) ("The decision to reaffirm an otherwise dischargeable debt affects the debtor's fresh start and ordinarily is one of the most important decisions to be made by an individual debtor in a chapter 7 consumer case. Debtor's counsel plays a critical role in protecting the interests of the debtor in making this important decision.").

[15] 11 U.S.C. § 524(m)(1). It is the practice of this Court to enter an order either "disapproving" or "not disapproving" a reaffirmation agreement in any case in which the presumption of undue hardship arises. The purpose of this order is to inform all interested parties that the Court has performed the mandatory review of the presumption of undue hardship and whether that presumption has been satisfactorily rebutted.

7

The protections provided in § 524(k)(5) and § 524(m)(1) do not, however, reach all debtors. When the debtor is not represented by counsel—either in general or in the negotiation of the reaffirmation agreement—the gatekeeper role played by the attorney, and evidenced by the certification under § 524(k)(5), is absent. In addition, the requirement that the court review a reaffirmation agreement in those cases where there is a presumption of undue hardship under § 524(m)(1) are not applicable under § 524(m)(2) if the creditor is a credit union, as defined in § 19(b)(1)(A)(iv) of the Federal Reserve Act.[16]

To protect debtors who are not represented by an attorney in the course of negotiating a reaffirmation agreement, however, the Bankruptcy Code places additional procedural safeguards in completely different subsections of § 524—subsections (c)(6) and (d). Section 524(c)(6)(A) states that in cases in which a debtor is proceeding *pro se*, a reaffirmation agreement is only enforceable if "the court approves such agreement as (1) not imposing an undue hardship on the debtor or a dependent of the debtor; and (2) in the best interest of the debtor."[17] In addition, § 524(d) requires that the court conduct a hearing to inform the debtor that the agreement is not required under any law or prior agreement between the parties and to advise the debtor of the legal effect and consequences

---

[16] 11 U.S.C. § 524(m)(2).

[17] 11 U.S.C. § 524(c)(6)(A).

8

of the reaffirmation agreement and any default under the agreement.[18] At that hearing, the court is also required to determine whether the agreement complies with the requirements of § 524(c)(6).[19] Unlike the requirements of § 524(m)(1), which do not apply to debts owed to credit unions, the only exception to the requirements of § 524(c)(6) are reaffirmation agreements where the debt is a consumer debt secured by real property.[20]

### B. The Court had the authority to disapprove the reaffirmation agreement.

Ms. Cooper is proceeding *pro se* and was not represented by an attorney in the course of negotiating the reaffirmation agreement with United. Therefore, pursuant to § 524(d), I was required to conduct a hearing to inform Ms. Cooper of the legal effect and consequences of the agreement and to inform her that she was not required by any law or prior agreement with United to sign the reaffirmation agreement. Furthermore, because the reaffirmed debt in this case was not secured by real estate, § 524(d)(2) required me to determine whether the reaffirmation agreement would impose an undue hardship on her and whether it was in her best interest.

---

[18] 11 U.S.C. § 524(d)(1).

[19] 11 U.S.C. § 524(d)(2). It is the practice of this Court to enter an order either "Approving" or "Not Approving" a reaffirmation agreement in cases where the debtor is proceeding *pro se*.

[20] 11 U.S.C. §§ 524(c)(6)(B) and (d)(2).

9

At the conclusion of the hearing, I found it was not in Ms. Cooper's best interest to reaffirm the debt. I thus entered an order not approving the reaffirmation agreement. I based my conclusion that entering into this agreement was not in Ms. Cooper's best interest for several reasons—including the fact that vehicles are typically a depreciating asset, and there is very little, if any, equity in the collateral to protect her in the event she had any interruption in income over the remaining life of the loan, or any unexpected expenses. I am always concerned, especially in the face of depreciating assets, that a debtor might face a deficiency judgment in the event of an unexpected reduction in income or increase in expenses. In addition, Ms. Cooper did not receive any tangible benefit from entering into the agreement to offset the risks of maintaining personal liability, such as a reduced principal or interest on the debt, or a lowering of the payments.

Another factor I considered was Ms. Cooper's $629 per month reduction in income between the time she filed her petition and the time she entered into the reaffirmation agreement—over a 25% decrease in income. To make the reaffirmation "work," Ms. Cooper also indicated that her monthly expenses had rather magically decreased by over $750 per month—nearly a 40% reduction—between the time of filing her petition and the filing of the reaffirmation agreement. The only explanation Ms. Cooper provided for this

10

drastic reduction in expenses—which was necessary if the paperwork was to show she could "afford" this reaffirmed debt—is that "much of the debt has been taken care of in the bankruptcy."

A review of Schedule J, which lists Ms. Cooper's expenses on the date of filing, however, shows that very few, if any, of the expenses listed would be eliminated by the discharge she will receive. For example, Ms. Cooper's expenses for rent, utilities, food, clothing, transportation, and health insurance would likely be unaffected by her bankruptcy filing. Those essential expenses, when combined with the payments required by the reaffirmation agreement on her vehicle, exceed her current monthly income—and this does not account for additional expenses most people have, such as medical and dental expenses not covered by insurance.[21] Based on the information available, I found—and continue to find—that it is not in Ms. Cooper's best interest to commit to the retention of personal liability this reaffirmation agreement would require.[22]

United filed its motion for reconsideration, claiming only that "[i]t appears that per 11 U.S.C. § 524(m)(2), the Court may not have the authority to make

---

[21] At the hearing on this matter, I asked Ms. Cooper how she had been able to reduce her monthly living expenses by over $750 each month—as she claimed in the reaffirmation agreement. Ms. Cooper was able to explain how her expenses had decreased to some degree, but she was unable to offer any explanation for approximately $345 in alleged monthly savings.

[22] I did advise Ms. Cooper that in my experience, most creditors with depreciating collateral seem to prefer to receive timely monthly payments rather than the return of the collateral, and that the Code permits debtors to voluntarily repay any debt, as § 524(f) clarifies.

11

the ruling set out in the Order entered February 9, 2012." United states that "[t]he court should consider the impact of 11 U.S.C. § 524(m)(2), in reviewing the court's decision." Its one page motion simply fails to mention, let alone analyze, the rest of § 524; it also fails to cite a single case in support of its position.

While § 524(m)(2) is pertinent, because United is a credit union, I disagree that § 524(m)(2) required a different result in this case. Section 524(m)(2)—by its own terms—applies only to eliminate the protections afforded a debtor under § 524(m)(1). I did not rely on § 524(m)(1) when deciding to not approve Ms. Cooper's reaffirmation agreement. Instead, I relied on the duties and responsibilities required of me under §§ 524(c)(6) and 524(d)(2).

The requirements of § 524(c)(6) operate wholly independently of the requirements of § 524(m)(1), and are not affected by the provisions of § 524(m)(2). The only exception to the requirements of § 524(c)(6) is if the debt is a consumer debt that is secured by real estate. Obviously that is not the situation here.

Section 524(c)(6) is an important part of the overall protections afforded by Congress to *pro se* debtors who are seeking to reaffirm debts with any creditor, including credit unions. I do not think it was merely an oversight by Congress. In fact, Congress required that the disclosures mandated in every reaffirmation include these sentences: "If you were not represented by an

12

attorney during the negotiation of your reaffirmation agreements, it will not be effective unless the court approves it. . . . The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests [unless debt secures real property]."[23] Nothing in the statutorily mandated disclosures excepts reaffirmation agreements with credit unions.

In cases in which a debtor is represented by an attorney, the attorney serves the role of counselor and gatekeeper to ensure the debtor is only giving up a portion of the debtor's fresh start when it is in the debtor's best interest to do so. Although Congress was willing to eliminate, pursuant to § 524(m)(2), the protection judicial oversight affords represented debtors who do business with credit unions because of the critical role the attorney serves in advising the

---

[23] 11 U.S.C. § 524(k)(3)(J)(i)(7). *See In re Ong*, 461 B.R. 559, 563 (9th Cir. BAP 2011) (distinguishing between represented and unrepresented debtors when determining whether Bankruptcy Code provides for independent court review of reaffirmation agreements with credit unions); *In re Obmann*, 2011 WL 7145760 (9th Cir. BAP 2011) (holding that because debtors were *pro se*, "the bankruptcy court was required to decide whether the Reaffirmation imposed an undue hardship and was in their best interest" despite the fact the agreement was entered into with a credit union); *In re Grisham*, 436 B.R. 896, 905 n.6 (Bankr. N.D. Tex. 2010) (recognizing if no attorney is involved and personal property is involved, the court must set a hearing to consider whether reaffirmation with credit union is in debtors' best interest); *In re Morton*, 410 B.R. 556. 562-63 (6th Cir. BAP 2009) (noting that the court's review of reaffirmation agreements to see whether the agreement is in the debtor's best interest is limited to cases involving *pro se* debtors if the creditor is a credit union); *In re Huskinson*, 2008 WL 2388113 at n.7 (Bankr. N.D. Ohio 2008) (holding that unrepresented debtors can be prevented from entering into financially unsound agreements with credit unions, citing § 524(c)(6)); *In re Moustafi*, 371 B.R. 434, 438 (Bankr. D. Ariz. 2007) (declining to approve a reaffirmation agreement with a credit union where it was not in the debtor's best interest); *In re Hoffman*, 358 B.R. 839, 843 (Bankr. W.D. Va. 2006) (holding that court is required to determine whether reaffirmation agreement between unrepresented debtor and Salem Federal Credit Union was in debtors' best interest).

debtor, it recognized that judicial oversight was still important for unrepresented debtors. When no attorney is present to advise and negotiate the best terms possible on behalf of a debtor, § 524(c)(6) requires the Court step in and essentially perform the role of counsel to ensure that the debtor is fully educated about the effect and consequences of a reaffirmation agreement, and that the debtor's best interest is being protected. And that responsibility exists to unrepresented debtors regardless the identity of the creditor; in other words, regardless if the creditor is a credit union.[24]

## IV. Conclusion

United's motion for reconsideration must be denied. Contrary to the assumptions made by United in suggesting that § 524(m)(2) forbids the Court from declining to approve a reaffirmation agreement based upon a determination that the agreement was not in Ms. Cooper's best interest pursuant to § 524(c)(6), the Court was required to perform the analysis.

**It is, therefore, by the Court ordered** that the Motion to Reconsider Order Not Approving Reaffirmation Agreement is denied.[25]

# # #

---

[24] *See In re Reed*, 403 B.R. 102, 105 (Bankr. N.D. Okla. 2009) (noting that the requirements of § 524(c)(6) "represent an attempt to insure that a debtor does not improvidently enter into reaffirmation agreements, and that the vitality of a debtor's 'fresh start' is preserved").

[25] Doc. 43.

14

Case 10-41895    Doc# 49    Filed 02/21/12    Page 14 of 14